UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA GIACALONE, et al. | Civil No. 3:11-CV-01647 |
| Plaintiffs, | |
| v. | (Judge Kosik) |
| NORTHEASTERN PENNSYLVANIA INSURANCE FRAUD TASK FORCE, et al. | **FILED SCRANTON** |
| Defendants. | JUL 2 4 2012 |
| | PER _____ DEPUTY CLERK |

## MEMORANDUM

Presently before us are Defendant Northeastern Pennsylvania Insurance Fraud Task Force ("Task Force") and Defendant Thomas E. Pavlick's Motion to Dismiss Plaintiffs' Amended Complaint, (Doc. 29), and Defendant Myles Walsh's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 31). The motions have been briefed and are ripe for review. For the reasons that follow, we will grant, in part, and deny, in part, Defendant Task Force and Defendant Pavlick's motion to dismiss and will grant Defendant Walsh's motion to dismiss.

**Factual Background**

We summarize the factual allegations of Plaintiffs' Amended Complaint as follows:

On January 28, 2011, Defendant Task Force executed search warrants[1] on Plaintiffs' chiropractic offices to investigate potential fraud. (Doc. 28, ¶21; Ex. A, p. 1). The search warrants were prepared by Defendant Pavlick[2], with the alleged assistance of Defendant Walsh[3]. (*Id.* at 13). At the time of the execution of the warrant, Defendants seized equipment and assets belonging to the Plaintiffs, essentially consisting of all the electronic and

---

[1] Copies of the search warrants, including the affidavits of probable cause (which were the same for both search warrants), were attached as exhibits to Plaintiffs' Amended Complaint. (Doc. 28, Ex. A, A-1).

[2] A detective for Defendant Task Force. (Doc. 28, ¶ 8).

[3] A detective "attached to" Defendant Task Force. (Doc. 28, ¶ 9).

paper records of the chiropractic businesses.[4] (*Id.* at 21). Plaintiffs allege that Defendants Pavlick and Walsh, *inter alia,* executed the search warrant. (*Id.*). According to the allegations of the Amended Complaint, "Defendant Walsh contacted local television stations for the purpose of having the television stations attend and film the search and broadcast not only the search, but comments and statements made by, *inter alia,* the Defendant Walsh about the criminal conduct in which the Plaintiffs were engaged in, which statements were not true and which will be disclosed during discovery." (*Id.* at 27).

Plaintiffs allege there was no probable cause for the issuance of the search warrants. (*Id.* at 15). They claim that Defendants Pavlick and Walsh violated their civil rights pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution when they applied for the search warrant and executed the search. (*Id.* at 32-37). Plaintiffs allege that "at the time Defendants Walsh and Pavlick applied for the search warrant and executed the search, they were aware that the Probable Cause Affidavit had false information therein and that there were omissions of fact which created falsehoods as alleged in Paragraph 16 and 17 hereof."[5] (*Id.* at 34). Plaintiffs further allege that Defendant Task Force violated their civil

---

[4]Itemized lists of the equipment and assets seized during the searches are found attached to the Amended Complaint. (Doc. 28, Ex. B and B-1).

[5]Paragraph 16 and 17 of the Plaintiffs' Amended Complaint state:

16. That in preparing the Affidavit of Probable Cause, the Defendant Pavlick, in conjunction with the Defendant Walsh, knowingly and deliberately or with reckless disregard for the truth, made false statements and omissions that created a falsehood in the application, including, but not limited to the following, all of which Defendants should have known as a result of any investigations prior to January 26, 2011:

A. The Affidavit was based upon Plaintiffs' failure to adhere to the policies and procedures of Highmark Blue Cross/Blue Shield, as opposed to acts which were criminal in nature.

B. Failed to disclose that Plaintiffs, with the exception of the year 2010, were out-of-network providers, as opposed to being in-network providers and, therefore, were not obligated to adhere to the policies of Highmark or the School District, violations of which formed the only basis of the Affidavit.

C. The Affidavit infers or implies that the Plaintiffs not requiring co-pays from their patients was, for some unidentified reason, illegal when the Plaintiffs, as out-of-network providers, were not obligated to require the payment of co-pays, even though it may have been a policy of Highmark or the Pocono Mountain School District.

rights pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution because Defendants Walsh and Pavlick allegedly acted as decision makers for Defendant Task Force. (Doc. 28, ¶¶ 38-45).

Plaintiffs allege that as a result of the search and seizure and ensuing publicity, their practices were reduced from seventy-five (75) patients per week to five (5) to ten (10) patients per week. (*Id.* at 29). They also allege that they have suffered, and will continue to suffer, total financial harm and that they are left with "virtually no chiropractic practice." (*Id.* at 30-31). Plaintiffs request the following relief: compensatory damages, punitive damages, reasonable attorney's fees and costs, and other such relief that this Court deems just and proper. (*Id.* at p. 10-11 and 12-13).

## Procedural History

On September 1, 2011, Plaintiffs filed two separate complaints alleging violations of 42 U.S.C. § 1983 against Defendants Pennsylvania Insurance Fraud Prevention Authority

---

D. Failed to disclose that the impossible days referenced in the Affidavit were not impossible, because time units were included in the billing for adjunct staff; that is, certified or licensed physical therapist, massage therapist or physical therapist, which may have been against Highmark or the School District's policies, but were not criminal and the Plaintiffs, as out-of-network providers were not bound by such policies.

E. Failed to disclose that the Plaintiffs' billing practices, when the use of adjunct staff was considered, were appropriate and accurate.

F. Failed to disclose that no matter what documentation was submitted by the Plaintiffs, Highmark and the School District, through its agent, [Spectrum], decided which claims or invoices would be paid and the amount that would be paid, the Plaintiffs having virtually no say in what they would receive, but were on a take it or leave it basis.

G. That the information contained in the third from the last page concerning amounts submitted and amounts allowed was false and inaccurate, since it was not disclosed that Highmark had not paid any monies to their patients since 2006 for Dr. Joseph Giacalone and the last quarter of 2007 for Dr. Maria Giacalone.

H. That neither the School District nor Highmark were injured or damaged by reason of the Plaintiffs not requiring their patients insured by the School District or Highmark to make co-payments.

17. That in addition to the false information or omissions creating false information, the Plaintiffs believe that other false information or omissions creating false information will be uncovered in discovery.

(Doc. 28, ¶¶ 16, 17).

("Authority"), Task Force, Pavlick, and Walsh and a defamation claim against Defendants Task Force and Walsh. (Doc. 1, 3:11-CV-1647; Doc. 1, 3:11-CV-1648). The cases were consolidated under Civil Number 3:11-CV-1647 on November 2, 2011. (Doc. 10). This Court granted Defendants' motions to dismiss (Doc. 8, 11, 19) on February 27, 2012 and allowed Plaintiffs' twenty (20) days to file an amended complaint. The Plaintiffs filed an Amended Complaint on March 15, 2012 against Defendants Task Force, Pavlick, and Walsh. (Doc. 28). Defendant Pennsylvania Insurance Fraud Prevention was voluntarily dismissed from the case on April 5, 2012. (*See* Doc.32 and 33). Defendants Task Force and Pavlick filed a motion to dismiss and a brief in support on March 22, 2012, (Doc. 29, 30), and Defendant Walsh filed a motion to dismiss on April 2, 2012 and a brief in support on April 16, 2012, (Doc. 31, 35). Plaintiffs responded to these motions by filing briefs in opposition to each of the motions. (Doc. 34, 36). Defendant Walsh filed a reply brief to Plaintiffs' brief in opposition. (Doc. 37).

**Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a claim for relief in any pleading may be defended against based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). When considering a 12(b)(6) motion to dismiss, the court must view the complaint in the light most favorable to the plaintiff and must accept all well-pleaded allegations as true. *See Eriskson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir. 1985). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. *See Phillips v. County of Allegheny,* 515 F. 3d 224, 232 (3d Cir. 2008) (the

Rule 8 pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."); *Nami v. Fauver,* 82 F. 3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (alteration in original and internal citations omitted). The court need not accept unsupported inferences, *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.,* 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, *Twombly,* 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. *See Ashcroft . Iqbal,* 556 U.S. 662, 677-679 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 677 *quoting Twombly,* 550 U.S. at 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677.

## Discussion

The Defendants' motions to dismiss and briefs in support (and Defendant Walsh's reply brief) argue for dismissal based on failure to state a claim pursuant to 42 U.S.C. § 1983, qualified immunity, failure to state a *Monell* claim, failure to allege a basis for punitive

damages, failure to state a claim for conspiracy[6], failure to state a defamation claim[7], and immunity from tort liability pursuant to the Pennsylvania Political Subdivision Tort Claims Act[8]. Plaintiffs respond to Defendants' motions arguing against dismissal.

## I. Failure to State a Claim Pursuant to 42 U.S.C. § 1983

Defendants Pavlick and Task Force[9] argue that Plaintiffs cannot support their claim premised on a lack of probable cause. (Doc. 30, p. 5-8). They state that the 22 page affidavit of probable cause

> explicitly defines the witnesses interviewed and [the specifics of] these interviews, defines the complaints received about Plaintiff's chiropractic practice, identifies the inconsistencies and short comings of the documentation provided to Highmark and the [independent] review of Dr. Michael Treichler. As such it is clear that the affidavit of probable cause provides the required basis to show the probability of criminal activity.

(*Id.* at 8). Regardless of the written content found in the affidavit of probable cause, Plaintiffs have challenged the validity of the search warrant alleging that Defendants have submitted false statements or material omissions in the affidavit of probable cause. (*See* Doc. 28). As such, an analysis of whether probable cause existed is not proper at this juncture.

In order to establish a Fourth Amendment claim challenging the validity of a search warrant on the basis that a law enforcement agent submitted false statements or omissions in the affidavit of probable cause, the plaintiff must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978). *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir., 1997). A "plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the

---

[6] Defendants Pavlick and Task Force argue that Plaintiffs' claim for conspiracy fails as a matter of law. (Doc. 30, p. 20-22). The Plaintiffs clarify that they are not alleging a claim against Defendants for conspiracy, (Doc. 34, p. 18), therefore, we will not consider this argument.

[7] Plaintiffs alleged a defamation claim solely against Defendant Walsh. Plaintiffs have withdrawn the defamation claim against Defendant Walsh, (Doc. 36, p. 15), so we will not consider this argument.

[8] See footnote 7.

[9] The claim against Defendant Task Force will be handled later in our Memorandum.

truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary to the finding of probable cause." *Id.*

Plaintiffs have successfully stated a claim against Defendant Pavlick for violation of their civil rights pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution. Viewing the Amended Complaint in the light most favorable to Plaintiffs and accepting all well-pleaded allegations as true, Paragraphs 13 through18 contain sufficient factual allegations against Defendant Pavlick asserting that he made false statements or omissions in the affidavit of probable cause. We are unable to consider whether these statements or omissions are material or necessary to the finding of probable cause at this time.[10] The Plaintiffs' pleadings meet the requirements set forth in *Iqbal*, as such, the motion to dismiss Defendant Pavlick for failure to state a claim will not be granted.

In regards to Defendant Walsh, Plaintiffs have failed to allege a § 1983 claim for violations of their Fourth Amendment rights. Defendant Walsh is not the affiant, nor is he ever mentioned in the Affidavit of Probable Cause.[11] Defendant Walsh's alleged involvement with procuring the search warrant includes mere conclusory statements that Defendant Walsh assisted Defendant Pavlick in preparing the application for the search warrant, that Defendant

---

[10] Plaintiffs have stated that discovery will yield more false statements and omissions. Moreover, Defendant Pavlick's motion does not address the alleged false statements and omissions found in the Amended Complaint.

[11] Defendant Walsh's brief in support of his motion to dismiss references various cases where courts have found that section 1983 liability in search warrant cases only extends to the affiant or persons who prepare the warrant. (Doc. 35, p. 11-12). While these cases are not from our circuit, we find them persuasive. *See Michalik v. Hermann*, 422 F.3d 252, 255 (5th Cir. 2005) (holding that appellants were entitled to qualified immunity for claims based on the procurement of the warrant because neither prepared, presented, nor signed the application for the search warrant); *Hampton v. Oktibbhea County Sheriff Dept.*, 480 F.3d 358, 365 (qualified immunity for officers who assisted with arrest but were not affiants and did not help prepare the arrest warrant); *Cooper v. City of Plano*, 2011 WL 4344193, *7 (E.D. Tex. 2011) ("The warrant and affidavit are attached to Defendants' motion, and Nuemeyer was not the affiant and is not mentioned anywhere in the affidavit. The mere involvement in the execution of the warrant does not state a plausible claim for violation of the Fourth Amendment, and any such claims against Neumeyer should be dismissed."); *Cooper v. Martin*, 634 F.3d 477, 480 (8th Cir. 2011) (the court did not extend *Malley* liability to a non-affiant officer); and *Butler v. Hammett*, 2010 WL 3855560, *4 (E.C. Tex. 2010) (dismissing a case against officer who was not the affiant and there were no facts alleged that he was responsible for the actual preparation of the affidavit.).

Pavlick prepared the Affidavit of Probable Cause "in conjunction with Defendant Walsh," and that the goal of Defendants Pavlick and Walsh in obtaining the search warrant was to create publicity for the Task Force. (*See* Doc. 28, ¶ 13, 16). Plaintiffs have failed to state any factual allegations to show that Defendant Walsh did any of the above, let alone to show that Defendant Walsh knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that were material or necessary to the finding of probable cause.

Plaintiffs' allegations that Defendant Walsh participated in the search also fail to state a Section 1983 claim for violation of the Fourth Amendment. *See, e.g., Showers v. Spangler*, 182 F.3d 165, 174 (3d Cir. 1999) (officers acting under a lead officer's direct operational control, who merely participated in search, without more, are not liable.) and *Lesoine v. County of Lackawanna*, 77 Fed. Appx. 74, 80 (3d. Cir. 2003) (officers that took part in execution of search warrant were entitled to qualified immunity because they did not draft the warrant and relied on the local procedures and review by the ADAs). We find that Plaintiffs' Amended Complaint fails to state a claim against Defendant Walsh.

## II. Qualified Immunity for Defendant Pavlick

Qualified immunity protects government officials who are performing discretionary functions by shielding these officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In addition, and particularly in § 1983 cases involving alleged violations of the Fourth Amendment, the Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officers's possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3rd Cir. 1997). In considering whether qualified immunity applies, a court may perform a two-step

sequence[12] announced by the Supreme Court in *Saucier v. Katz,* 533 U.S, 194, 200 (2001). A court must first decide whether the facts alleged by the plaintiff make out a violation of a constitutional right. *Saucier,* 533 U.S. at 201. If a violation has occurred, then the court must decide whether the right was clearly established. *Id.*

Defendant Pavlick argues that he is entitled to qualified immunity. (Doc. 30, p. 8-11). In his brief in support, Defendant Pavlick argues that even if it is found that the service and execution of the search warrant amounts to a constitutional violation, he is still entitled to qualified immunity because he made a reasonable mistake as to what the law requires. (*See id.*). We do not find this argument to be persuasive because it only contains a legal explanation of qualified immunity, specifically the second prong of *Saucier* and reasonable mistakes made by officers, and it fails to include any factual analysis. (*See id.*).

As stated above, in order to establish a Fourth Amendment claim challenging the validity of a search warrant on the basis that a law enforcement agent submitted false statements or omissions in the affidavit of probable cause, the plaintiff must satisfy the two-part test developed by the Supreme Court in *Franks,* 438 U.S. at 155-56. *Sherwood,* 113 F.3d at 399. Plaintiffs have alleged that Defendant Pavlick made false statements and material omissions in the Affidavit of Probable Cause, and at this stage, we must accept these allegations as true. (Doc. 28, ¶¶ 13-23, 32-37). However, at this stage, we cannot complete the *Franks* analysis of whether these false statements or omissions are material or necessary to the finding of probable cause for the reasons set forth above. Further, because we do not know the extent of the false statements and omissions, whether these false statements and omissions were material or necessary to the finding of probable cause, and to what extent these statements were made knowingly and deliberately, or with a reckless disregard for the

---

[12]*Overruled in part by Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (Relaxed the two step process by no longer requiring courts to determine the prongs in sequential order. While this two step process is no longer mandatory, it is often appropriate and beneficial.).

truth[13], we cannot yet discern whether Defendant Pavlick's actions were reasonable under the circumstances. Defendant Pavlick has failed to address these allegations. Qualified immunity is a "defense for the defendant to plead and prove, not for the plaintiff to disprove." *Oatess v. Sobolevitch,* 914 F.2d 428, fn. 8 (3rd Cir. 1990). As such, we do not believe that there is a sufficient record before us to address the issue of qualified immunity at this time.

### III. *Monell* Liability for Defendant Task Force

Defendant Task Force argues that Plaintiffs' *Monell* claim should be dismissed with prejudice. (Doc. 30, p. 12-19). Plaintiffs, in addition to questioning whether Defendant Task Force is a municipality under *Monell,* argue that they have stated a viable claim against Defendant Task Force. (Doc. 34, p. 14-17). "Under [*Monell v. Department of Social Services,* 436 U.S. 658 (1978)], a city, municipality or private entity that is a state actor 'may not be held vicariously liable under § 1983 for the actions of its agents' because 'there is not *respondeat superior* theory of municipal liability.'" *Regan v. Upper Darby Twp.,* 636 Fed. Appx. 917, 922 (3rd Cir. 2010) (non-precedential) (internal citations omitted). Defendant Task Force can only be held liable under *Monell* for the actions of its detectives in executing an official policy or custom.

In *Monell,* the Supreme Court stated:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983.

*Monell,* 436 U.S. at 694. Policies are made "when a decisionmaker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy or edict." *Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.,* 587 F.3d 176, 193 (3rd Cir. 2009) *citing Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3rd Cir. 1996). "Customs are 'practices of

---

[13]For the purposes of a motion to dismiss, Plaintiffs have sufficiently alleged that Defendant Pavlick made the false statements and omissions knowingly and deliberately, or with a reckless disregard for the truth.

state officials so permanent and well settled as to virtually constitute law.'" *Id.*

We find that Plaintiffs have failed to state a claim against Defendant Task Force. In the Amended Complaint, Plaintiffs refer to Defendant Walsh and Defendant Pavlick as detectives of the Northeastern Pennsylvania Insurance Fraud Task Force. (Doc. 28, ¶¶ 8, 9). Plaintiffs then allege that Defendants Walsh and Pavlick "had final decision making authority to establish polices and/or customs for the Defendant Task Force." (*Id.* at 10). This statement, without further supporting factual allegations, and in conjunction with Plaintiffs' previous allegations that both defendants were detectives in the Task Force, reads as a legal conclusion cast as a factual allegation. Paragraph 19 states that "Defendants Pavlick and Walsh, with the authority to do so, created or established a policy for the Defendant Task Force to go to any means to obtain a search warrant to further an investigation, even if it meant providing false information or creating a falsehood by failing to provide information." (*Id.*). Plaintiffs fail to allege factual allegations that Defendants Pavick and Walsh had the authority to create or establish such a policy and only reference the search warrants of the two Plaintiffs in establishing that the behavior in this instance constitutes a policy or custom. Because of this, we find that Paragraph 19 reads as a legal conclusion. Paragraphs 39[14], 40[15], 42[16], and 45[17], without any factual support for the allegations, also read as mere legal

---

[14]That the Defendants Walsh and Pavlick were not, in completing and filing the application for the search warrant, acting as employees or agents of the Task Force, but rather acted as decision makers therefor. (Doc. 28, ¶ 39).

[15]That the Defendants Walsh and Pavlick are decision makers for the Task Force who have final discretionary authority to establish policies for the Task Force for purposes of obtaining a search warrant. (*Id.* at 40).

[16]That Defendants Walsh and Pavlick had the final discretionary authority to decide and determine as a matter of policy of the Task Force when to contact the media for purposes of publicizing the Task Force actions in accomplishing searches and seizures. (*Id.* at 42).

[17]That the Defendant Task Force, as a result of the actions of its decision makers, the Defendants Walsh and Pavlick, as hereinbefore alleged, deprived the Plaintiffs of their constitutional rights caused by the Fourth Amendment to the United States Constitution which is actionable pursuant to 42 U.S.C., Section 1983. (*Id.* at 45).

conclusions and/or formulaic recitations of the elements of a cause of action.

Moreover, Plaintiffs have alleged that Defendant Task Force is an arm of the Pennsylvania Insurance Fraud Prevention Authority. The Pennsylvania Insurance Fraud Prevention Authority was established pursuant to 40 Pa. C.S. § 325.21[18]. The Authority is composed of the Attorney General or his designees, a representative of the Philadelphia Federal Insurance Task Force, four representatives of insurers, and one representative of purchasers of insurance. 40 Pa. C.S. § 325.21(b). The Authority was given different powers and duties[19] to deal with insurance fraud in Pennsylvania.

---

[18]The Court will take judicial notice of the Pennsylvania Statutes concerning the Insurance Fraud Prevention Authority.

[19]The authority shall have the powers necessary and convenient to carry out and effectuate the purposes and provisions of this article and the purposes of the authority and the powers delegated by other laws, including, but not limited to:

(1) Employ administrative, professional, clerical and other personnel as may be required and organize the staff as may be appropriate to effectuate the purposes of this article.

(2) Have a seal and alter the same at pleasure, have perpetual succession, make, execute and deliver contracts, conveyances and other instruments necessary or convenient to the exercise of its powers and make and amend bylaws.

(3) Procure insurance against any loss in connection with its property, assets or activities.

(4) Apply for, solicit, receive, establish priorities for, allocate, disburse, contract for, administer and spend funds in the fund and other funds that are made available to the authority from any source consistent with the purposes of this article.

(5) Make grants to and provide financial support for the Section of Insurance Fraud, the unit of insurance fraud in the Philadelphia District Attorney's Office, other county district attorneys' offices, other government agencies, community, consumer and business organizations consistent with the purposes of this article and considering the extent of the insurance fraud problem in each county of this Commonwealth.

(6) Advise the State Treasurer in relation to the investment of any money held in the fund and any funds held in reserve or sinking funds and any money not required for immediate use or disbursement and to advise the State Treasurer in relation to the use of depositories for moneys of the fund.

(7) Assess the scope of the problem of insurance fraud, including areas of this Commonwealth where the problem is greatest, and review State and local criminal justice policies, programs and plans dealing with insurance fraud.

(8) Develop and sponsor the implementation of Statewide plans, programs and strategies to combat insurance fraud, improve the administration of the insurance fraud laws and provide a forum for

Defendant Task Force argues that these provisions "make it clear that the final policy making authority rests not with the first line employees of the [Task Force], its Detectives, but rather, with the highest levels of supervision and policymaking, the Authority itself." (Doc. 30, p. 13). In response, Plaintiffs argue that none of these provisions are related to obtaining search warrants and that the Authority, in previous documents surrounding this case,

---

identification of critical problems for those persons dealing with insurance fraud.

(9) Coordinate the development, adoption and implementation of plans, programs and strategies relating to interagency and intergovernmental cooperation with respect to insurance fraud law enforcement.

(10) Promulgate rules or regulations related to the expenditure of moneys held in the fund in order to assist and support those agencies, units of government, county district attorneys' offices and other organizations charged with the responsibility of reducing insurance fraud or interested and involved in achieving this goal.

(11) Audit at its discretion the plans and programs that it has funded in whole or in part in order to evaluate the effectiveness of the plans and programs and withdraw funding should the authority determine that a plan or program is ineffective or is no longer in need of further financial support from the fund.

(12) Report annually on or before the first day of April to the Governor and the General Assembly on the authority's activities in the preceding period of operation.

(13) Meet with the Section of Insurance Fraud on at least a quarterly basis in order to advise and assist it in implementing its statutory mandate.

(14) Advise the General Assembly on matters relating to insurance fraud and recommend to the General Assembly on an annual basis any changes to the operation of the Section of Insurance Fraud. The report shall be available for public inspection.

(15) Establish either alone or in cooperation with authorized insurance companies and licensed agents and producers a fund to reward persons not connected with the insurance industry who provide information or furnish evidence leading to the arrest and conviction of persons responsible for insurance fraud.

(16) Require as a condition of every application and request for financial support, including every application for ongoing renewal of a multiyear grant under section 1123(f), that the applicant describe both the nature of and the amount of funding for the activities, if any, devoted to the investigation and prosecution of insurance fraud at the time of the application or request.

(17) Require as a condition of every application and request for financial support that every recipient of funding report annually within four months of the close of each funding cycle to the authority on the use of the funds obtained from the authority during the previous year, including a description of programs implemented and results obtained. The authority will include this information on the use of funds by grantees in its annual report under paragraph (12) and send a copy specifically to the chairman and the minority chairman of the standing committees of the Senate and the chairman and the minority chairman of the standing committees of the House of Representatives with jurisdiction over insurance matters.

40 Pa. C.S. § 325.22.

contended that it was not involved in the obtaining of the specific search warrants at issue, or search warrants in general. (Doc. 34, p. 16). They argue further that Defendant Task Force investigates (which includes the obtaining of search warrants) and prosecutes insurance fraud, so the Task Force itself establishes the policies for its investigations. (*Id.*).

Plaintiffs allegations that Defendant Task Force is an arm of the Pennsylvania Insurance Fraud Prevention Authority and their initial labeling of Defendants Walsh and Pavlick as detectives for Defendant Task Force, in conjunction with the conclusory nature of their factual allegations concerning who holds final decision making authority to establish policies and/or customs for Defendant Task Force, warrants a finding that Plaintiffs have failed to set forth a *Monell* claim against Defendant Task Force for violation of Plaintiffs' rights.

### IV. Punitive Damages

Defendants Pavlick and Task Force also argue that punitive damages are not available against municipal entities and defendants in their official capacities as a matter of law. (Doc. 30, p. 19-20). Plaintiffs recognize that punitive damages are not available under Section 1983 from a municipality. (Doc. 34, p. 17). The parties are correct in their assertions concerning the unavailability of punitive damages against municipalities. Moreover, because Defendant Task Force has been dismissed from this case, this argument is no longer relevant.

Punitive damages against Defendant Pavlick, however, may be available. In a Section 1983 action, "individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants." *Smith v. Wade,* 461 U.S. 30, 35 (1983). In order to qualify for a punitive damages award, "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." *Savarese v. Agriss,* 883 F.2d 1194, 1204 (3rd Cir. 1989). Defendant Pavlick argues that, at most, Plaintiffs have alleged that agents of the Task Force served and

Pavlick argues that, at most, Plaintiffs have alleged that agents of the Task Force served and executed a signed warrant. (Doc. 30, p. 19). Plaintiffs correctly point out that they have alleged much more than that; Plaintiffs have alleged that Defendant Pavlick made false statements and omissions in the Affidavit of Probable Cause used to obtain the search warrant. (Doc. 34, p. 18). Taking Plaintiffs' well-pleaded factual allegations as true, they have alleged that Defendant Pavlick's conduct could be seen as reckless, callous, intentional or motivated by evil. As such, they have sufficiently alleged a basis for an award of punitive damages against Defendant Pavlick.

## Conclusion

Defendant Walsh's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 31), will be granted and Defendant Walsh will be dismissed from this action. Defendants Task Force and Pavlick's Motion to Dismiss Plaintiffs' Amended Complaint, (Doc. 29), will be granted, in part, and denied, in part. Defendant Task Force will be dismissed from this action. Defendant Pavlick will not be dismissed and will remain as the sole defendant in this action.